IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JANIECE L. STRUNK,

        Plaintiff,

v.                                                                                         Case No. 21-1164-JWB

AIRXCEL, INC.,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment. (Doc. 38.) The motion is fully briefed and is ripe for decision. (Docs. 39, 44, 47.) For the reasons stated herein, the motion for summary judgment is GRANTED.

**I. Facts**

The court finds the following facts to be uncontroverted for purposes of summary judgment. Factual disputes about immaterial matters are excluded from the following statement, as are factual averments asserted by the parties that are not based on personal knowledge or supported by record citations.

Defendant's RV Products division operates a facility in Wichita where it manufacturers rooftop air conditioning units for recreational vehicles. Robin Leach has been the President of RV Products since June of 2015. Jodi McGregor has been the Director of Finance and Human Resources since 2013 and is responsible for managing the financial and personnel-related functions at the Wichita facility. Danielle Collins has been the Senior Manager of Warehouse

since April of 2020 and is responsible for managing warehouse operations at the facility. (Doc. 39 at 9-10.)

The RV Products 2015 Handbook for Factory Hourly Employees contains a job-bidding policy that prohibits "bumping" based on seniority and states that job awards are determined based on qualifications, past quality of work, performance review scores, attendance, safety record, and the ability to work with others. It contains a reduction-in-force ("RIF") policy stating that employees who are subject to layoff may stay on the recall roster for up to six months and will be recalled based on qualifications and performance review scores. (*Id.* at 10.)

Plaintiff began her full-time employment at RV Products (or its predecessor) on October 10, 1983. She held various non-supervisory positions throughout her employment. For the first several years, she worked on the assembly line. In 2001, Plaintiff submitted a worker's compensation claim based on a work-related injury to her back. Plaintiff was subsequently moved off the assembly line into an Inventory Distributor position as an accommodation for her injury-related work restrictions. In 2002, Plaintiff bid for and was moved to the position of Refrigeration Analyst. Her title was subsequently changed to Quality Control Technician and she worked in the Quality Assurance Department. Plaintiff remained in the latter position throughout her tenure with Defendant, although her duties in the position changed at times. (*Id.* at 10-11.)

In early 2002, Plaintiff provided Defendant with various work restrictions from her doctors that included limitations on standing, sitting, and walking for prolonged periods of time, in addition to lifting. In March 2003, Plaintiff provided a letter from her doctor stating that she had the following permanent work restrictions: 10 pounds lifting; and bending, stooping, and twisting no more than 6 hours per day. (*Id.* at 11; Doc. 39-6 at 2.)

In March 2017, Defendant considered Plaintiff for temporary placement on the assembly line to cover for an employee who was going to be out on vacation. Plaintiff asked her healthcare provider, Dr. Claudia Wendell, to provide updated work restrictions because she did not believe she could physically perform the role on the assembly line. Plaintiff told the doctor in a letter that "I do not want to be taken out of my current position at work, which has been accommodating me for the last 16 years." (Doc. 39 at 12.) Wendell provided Defendant work restrictions for Plaintiff that included unspecified limitations on standing, sitting, and walking for prolonged periods of time, in addition to the permanent work restrictions Plaintiff was given in 2003. (*Id.*) On March 20, 2017, Plaintiff worked a half a day on the assembly line, during which her work restrictions were accommodated,[1] before she was removed and returned to her regular duties as a Quality Control Technician. (*Id.*)

In March 2018, as a result of a functional capacity evaluation, Dr. Wendell provided additional work restrictions for Plaintiff that limited her forward reaching and standing/walking to "occasionally" instead of "frequently." (*Id.* at 12.) Defendant accommodated the restrictions.

In early 2020, RV Products employed approximately 400 employees at its Wichita facility. As the COVID-19 pandemic began to spread, RV Products' executive team – including Leach, McGregor, and Sandy Jessop – worked on a contingency plan in preparation for a potential governmental shut-down order or a significant drop in consumer demand for their product. By March 19, 2020, they had circulated a contingency plan with action steps and an employee layoff ranking system. The ranking placed all employees in one of nine boxes based on a combination

---

[1] Plaintiff attempts to controvert this and other facts despite having stipulated to them in the Pretrial Order. (*See* Doc. 36 at 3.) Plaintiff has shown no reason why she should not be bound by the stipulations previously made. *See Bowers v. Netsmart Techs., Inc.*, No. 2:19-CV-2585-JAR, 2021 WL 2104985, at *2 (D. Kan. May 25, 2021) ("Because Plaintiff neither moves to withdraw the stipulations, nor explains why they should not be binding on summary judgment, the Court finds that he is bound by the stipulations in the Pretrial Order.")

of the employee's performance potential and the employee's demonstrated performance according to his or her most recent performance appraisal. The performance potential was based primarily on the employee's historical performance review scores and disciplinary history. (*Id.* at 14.) Plaintiff and 13 other employees, ranging in age from 22 to 64, were placed in the lowest of the nine ranking boxes.

On March 24, RV Products announced a temporary shutdown of the Wichita facility related to the COVID-19 pandemic. It provided notice that nearly all employees were being furloughed, with an initial shutdown period expected to be from March 25 to April 7, and potentially longer. Defendant cites evidence that during this period, Leach, Jessop, and McGregor analyzed operations to determine ways the Wichita facility could be made more efficient. According to Leach and McGregor, the executive team determined that the Quality Control Technician position held by Plaintiff was unnecessary and should be eliminated. (Doc. 39-2 at 4; 39-3 at 4.)

On April 23, 2020, Plaintiff provided Defendant updated restrictions indicating Plaintiff should sit 5 hours per 8-hour workday. (*Id*. at 13.)

On June 2, Defendant sent Plaintiff a notice stating that her position was being eliminated and that she was permanently laid off effective June 5.

Kristine Kohr, Defendant's Human Resources Manager, told Plaintiff she would still be considered for recall for six months, and that if she was recalled in that timeframe her seniority would remain intact. Defendant's stated criteria for recall considered: (1) the individual's overall performance rating; (2) the job duties of the position; and (3) seniority if all other factors were equal. (Doc. 39-13 at 2.) Defendant cites evidence that it looked for open positions Plaintiff could perform with her medical restrictions but was unable to locate any other positions that Plaintiff was qualified for and could perform with or without reasonable accommodation. (Doc. 39-3 at 4.)

4

Defendant was hiring inspectors during this period whose duties included walking up and down the assembly line for eight hours a day, but Plaintiff could not perform the essential functions of that position, with or without reasonable accommodation.  (Doc. 39 at 16-17.)

Prior to the elimination of her position, Plaintiff was the only employee at the Wichita facility who performed the job duties associated with the Quality Control Technician position.  After the position was eliminated, the duties associated with Plaintiff's position were divided up and absorbed by employees in other positions.  No other employees were hired to fill the eliminated Quality Control Technician position previously held by Plaintiff.  (Doc. 39-3 at 4-5.)

Between April and June 2020, many of the employees who were furloughed during the temporary shutdown were recalled, including approximately 20 who were the same age or older than Plaintiff.  In total, 58 employees were permanently laid off in 2020 because of position elimination or workforce reductions.  Of those 58 employees, 16 were 40 years of age or older in 2020; the remaining 42 were under the age of 40.  (*Id.* at 5.)  Plaintiff never reapplied for any other position with Defendant.  (*Id.*)

Plaintiff was 58 years old at the time of her layoff.  She claims she was discriminated against on account of her age and disability[2] when Defendant eliminated her position.  Plaintiff asserts claims of age discrimination under the federal Age Discrimination in Employment Act (ADEA) and the Kansas counterpart (KADEA) and disability discrimination under the federal Americans with Disabilities Act[3] (ADA) and Kansas Act Against Discrimination (KAAD).  (Doc. 36 at 5.)  Defendant moves for summary judgment, asserting that all of claims fail because Plaintiff cannot establish a prima facie case of discrimination or show that Defendant's stated reasons for

---

[2] Neither the complaint nor the Pretrial Order specifically identifies the alleged disability or a life activity impaired by it, but both describe Plaintiff's back and neck problems, including spinal stenosis and degenerative disc disease, and assert that Plaintiff has a disability. (*See* Doc. 36 at 5.)  *Cf.* 42 U.S.C. § 12101(1) (defining disability).
[3] As amended by the 2008 ADA Amendments Act, or ADAAA.

5

terminating Plaintiff's employment are pretextual, and further that the two Kansas claims fail because Plaintiff failed to exhaust administrative remedies on those claims. (Doc. 39.)

**II. Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored, information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence ... of a genuine dispute"; or by "showing that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. 317. Also, the court will only consider facts based on personal knowledge or supported by exhibits. Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III. Analysis

#### A. Framework for Analyzing Discrimination Claims

The ADEA makes it unlawful for an employer to "discharge any individual … because of such individual's age...." 29 U.S.C. § 623(a)(1). The ADA makes it unlawful for covered employers to "discriminate against a qualified individual on the basis of disability in regard to ... the ... discharge of employees." 42 U.S.C. § 12112(a). Where, as here, a plaintiff relies on circumstantial (rather than direct) evidence to show an employer's discriminatory intent, the court examines the claim under the burden-shifting framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). That framework first requires Plaintiff to show a prima facie case of discrimination. If Plaintiff makes that showing, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. If it does so, the burden then shifts back to Plaintiff to show that Defendant's explanation was merely pretextual. *See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (citation omitted). Plaintiff may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 1267 (citing *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1280 (10th Cir. 2010)).

#### B. Application to Plaintiff's Claims.[4]

---

[4] The same standards govern discrimination claims under the ADEA and the KADEA. *See Skerce v. Torgeson Elec. Co.*, 852 F. App'x 357, 360, n.1 (10th Cir. 2021) ("[t]he analysis for claims of age discrimination is the same under both statutes.") Claims under the ADA and KAAD are also subject to identical standards. *See Nyanjom v. Hawker Beechcraft Corp.*, 641 F. App'x 795, 799 (10th Cir. 2016) ("We consider Mr. Nyanjom's discrimination claims under the ADA and the KAAD in tandem because the same standards and burdens govern both claims."

7

A plaintiff asserting an age discrimination claim in the context of a RIF makes a prima facie case by showing: 1) that she is within the protected age group; (2) that she was doing satisfactory work; (3) that she was discharged despite the adequacy of her work; and (4) that there is some evidence the employer intended to discriminate against her in reaching its RIF decision. *Brainard v. City of Topeka*, 597 F. App'x 974, 978 (10th Cir. 2015) (citing *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998)). *See Upchurch v. Wastequip*, LLC, No. 21-7055, 2022 WL 4099433, at *3 (10th Cir. Sept. 8, 2022) (citing *Jones*, 617 F.3d at 1279). Similarly, under the ADA a plaintiff ordinarily makes a prima facie case by showing: (1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of the job with or without accommodation, and (3) she suffered an adverse employment action because of her disability. *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 989–90 (10th Cir. 2021) (citation omitted). In the context of a RIF, this last element requires some evidence – whether direct, circumstantial, or statistical – "tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *See Thompson v. Fresh Products, LLC*, 985 F.3d 509, 524 (6th Cir. 2021) (quoting *Barnes v. GenCorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

Plaintiff's brief does not specifically address the prima facie elements. Instead, she simply argues that the RIF "was pretextual and intended to hide age and disability discrimination." (Doc. 44 at 13.) The court notes that a plaintiff's burden in making a prima facie case is not onerous. *See Bird v. West Valley City*, 832 F.3d 1188, 1200 (10th Cir. 2016) (plaintiff need only make a de minimis showing to establish a prima facie case). Moreover, in the context of a RIF the prima facie analysis tends to merge with analysis of pretext, because the employer almost always cites the RIF as the non-discriminatory reason for the plaintiff's termination. In this instance, the court will assume for purposes of analysis that Plaintiff has satisfied the light burden of making a prima

8

facie showing on both her age and disability discrimination claims. Nevertheless, Plaintiff has failed to cite evidence that Defendant's facially-neutral reasons for terminating her employment – that is, her RIF retention ranking and the elimination of her position – were pretextual. As discussed below, the court accordingly concludes that Defendant is entitled to summary judgment on Plaintiff's age and disability discrimination claims.

A plaintiff can show that a termination in the context of a RIF was pretextual, among other ways, by evidence that the termination was contrary to the employer's own RIF formula, by evidence that a performance evaluation under the RIF criteria was deliberately falsified or manipulated so as to affect her termination, or by evidence that the RIF is more generally pretextual, such as where statistical evidence shows that older workers were disproportionately targeted. *Beaird*, 145 F.3d at 1168. Plaintiff cites all of these factors but fails to support them with evidence raising a genuine issue of fact as to pretext.

Plaintiff argues, for example, that Defendant's "RIF study gave her an extremely low evaluation for job performance, even though throughout her career she had gotten good job evaluations." (Doc. 44 at 11.) The only evidence cited to support this assertion is Plaintiff's own declaration, wherein she states in conclusory fashion that her evaluations for 36 years "were good," and that "the lousy evaluation I got in the RIF study is simply false." (Doc. 44-1 at 3.) Elsewhere, Plaintiff's brief states that she "received good reviews for 36 years, and then suddenly received contradictory reviews the last two years…." (*Id.* at 14-15.) But Plaintiff cites no actual performance evaluations or other evidence showing that Defendant's calculation of her performance scores for the RIF was erroneous or falsified.[5] To the extent Plaintiff simply disagrees with Defendant's assessment of her performance, her subjective beliefs are not sufficient to show

---

[5] Neither party has cited to any written performance evaluations.

pretext. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) ("It is the perception of the decision maker which is relevant, not plaintiff's perception of herself.") Plaintiff does refer to some unspecified "document provided by Airxcel" that allegedly shows "the average performance review for employees," and she contends this document shows that "Plaintiff grids out at a '2.6' score which is above average," and that "10 people on this list whose score averaged less than 2 … were not put in Box 9." (Doc. 44-1 at 6.) But Plaintiff fails to explain what these numbers represent or how they show that her placement in the lowest ranking box was pretextual. The uncontroverted facts show that Defendant's rankings were based on multiple variables, including historical and more recent job performance scores. As noted above, Plaintiff concedes that she received lower ratings in the last two years. Plaintiff does not show that her combined score after these variables were taken into account was higher than the employees referred to above who were placed in a higher category. *Beaird*, 145 F.3d at 1169 (employer may "conduct its RIF according to its preferred criteria of performance … and we will not disturb that exercise of defendant's business judgment.")

Plaintiff also argues "[i]t is ridiculous to believe that Defendant kept Plaintiff on as an employee from age 20 to age 59, and that at age 59 she suddenly became a lousy employee." (Doc. 44 at 13.) An inference of pretext or discrimination does not arise, however, merely from the fact that Plaintiff was a long-term employee whose more recent job performance reviews were not as good as prior ones. Plaintiff must cite to evidence to show that Defendant's ranking of her performance was not an honest assessment. As the Tenth Circuit previously stated in rejecting a similarly unsupported argument:

> The trouble with these arguments is that they are merely general disagreements with Kerr–McGee's evaluation of which geologists were best able to guide the company through a difficult economic time. Under the law of this circuit, even if the jury chose to believe plaintiff's assessment of his performance rather than Kerr–

10

> McGee's, that choice, standing alone, does not permit a conclusion that Kerr–McGee's version was a pretext for age discrimination. *See Branson v. Price River Coal Co*., 853 F.2d 768, 772 (10th Cir.1988) ("As courts are not free to second guess an employer's business judgment, this assertion [that plaintiff was equally or more qualified than the people retained] is insufficient to permit a finding of pretext."). This circuit's view is that a plaintiff cannot prevail by merely challenging in general terms the accuracy of a performance evaluation which the employer relied on in making an employment decision without any additional evidence (over and above that of the prima facie case) of age discrimination. *See id*. (citing *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980)); *accord Bienkowski v. American Airlines, Inc*., 851 F.2d 1503, 1508 (5th Cir.1988). Thus, plaintiff's general dispute concerning his job performance, in the absence of any other evidence of age discrimination, does not provide a sufficient basis for a jury to infer that Kerr–McGee terminated plaintiff on the basis of his age.

*Fallis v. Kerr-McGee Corp*., 944 F.2d 743, 747 (10th Cir. 1991). Plaintiff also complains that Defendant's ranking of her performance was "subjective." (Doc. 44 at 6.) This bare assertion is likewise insufficient. Although "[t]he subjective nature of the evaluations may be a factor to consider in pretext," it "ordinarily is not by itself sufficient to establish pretext." *Pippin v. Burlington Res. Oil And Gas Co*., 440 F.3d 1186, 1195 (10th Cir. 2006) (citation omitted.) The court "'typically' will infer pretext from the employer's use of subjective evaluation criteria in the hiring process 'only when the criteria on which the employers ultimately rely are *entirely* subjective in nature.'" *Ford v. Jackson Nat'l Life Ins. Co*., 45 F.4th 1202 (10th Cir. 2022) (citations omitted). Plaintiff has not made an evidentiary showing sufficient to warrant an inference of pretext from Defendant's allegedly subjective performance ranking.

Plaintiff finally contends the RIF itself was pretextual because Defendant added new jobs in July 2020 and June 2021 when demand for its products increased, which allegedly "demonstrates that there was no need for a RIF." (Doc. 44 at 13-14.) Plaintiff contends that "[o]n the date that Plaintiff was discharged, [Defendant] knew that the COVID-19 epidemic would be good for their business," which "raises the factual issue of whether Defendant falsified or exaggerated numbers to make sure that Plaintiff was included in a dismissal through the RIF." (*Id.*

11

at 14.) As an initial matter, Plaintiff relies on what appears to be speculation in asserting that Defendant "knew" at the time of the termination that demand for its products was such that there was "no need" for a RIF.[6] Such speculation is insufficient to show pretext. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004) ("Testimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment.") As for the "need" for a RIF, Plaintiff again fails to cite evidence from which a jury could reasonably conclude that the RIF itself was a pretext for dismissing Plaintiff or others on account of age or disability. "When a company exercises its business judgment in deciding to reduce its work force, it need not provide evidence of financial distress to make it a legitimate RIF." *See Button v. Dakota, Minnesota & E. R.R. Corp.*, 963 F.3d 824, 833 (8th Cir. 2020) (quoting *Rahlf v. Mo-Tech Corp.*, 642 F.3d 633, 639 (8th Cir. 2011) (internal quotations omitted). Even so, the uncontroverted facts here show that Defendant formulated its plan for layoffs and elimination of Plaintiff's position in the midst of the initial phase of a pandemic when businesses faced potential disruption or closure. As it happened, the impacts of COVID-related shutdowns and closures subsequently caused a surge in demand for Defendant's products. Plaintiff cites no historical precedent for such swings in demand, however, nor does she cite evidence that Defendant's plans were not an honest exercise of its business judgment. In these circumstances, no inference of pretext or discrimination arises from the fact that Defendant implemented its RIF plan before reversing course and recalling some workers and hiring others to meet rising demand. *Cf. Brainard*, 597 F. App'x at 982 (pretext may be found where "a claimed business judgment was 'so idiosyncratic or questionable that a factfinder could reasonably find that it is a pretext for illegal discrimination.'") *See also Atanus v.*

---

[6] Plaintiff acknowledges that "COVID-19 had brought the American economy to a standstill" at the time of the layoff. (Doc. 44 at 8.) Plaintiff says "[s]he did not know [then] that the RV business would boom because of COVID-19, but she suspects that the managers knew." (*Id.*)

*Perry*, 520 F.3d 662, 674 (7th Cir. 2008) ("The main inquiry in determining pretext is whether the employer honestly acted on the stated reason rather than whether the reason for the [RIF] was a correct business judgment.") (internal quotation marks omitted).

Similarly, Plaintiff cites no evidence reasonably suggesting that Defendant's elimination of her particular position – the only such position in the company – was not a genuine or honest effort to streamline operations. It is uncontroverted that after Defendant decided to eliminate Plaintiff's position, the job duties of the Quality Control Technician position were divided up and absorbed by employees in other positions. Thereafter, no one was hired to take over Plaintiff's former position. Nor was Plaintiff singled out insofar as elimination of a position was concerned. It is uncontroverted that 58 employees were permanently laid off in 2020 because of position elimination or workforce reductions. Of the 58 employees permanently laid off, 16 were 40 years of age or older, while the remaining 42 were under the age of 40. Nothing about those facts reasonably suggests the RIF was a pretext or subterfuge for eliminating older workers or individuals with disabilities. *See Brainard*, 597 F. App'x at 982 (plaintiff failed to point to any evidence that the process used to eliminate her position was any different from the process used to eliminate other positions in the RIF). In sum, absent evidence reasonably tending to show pretext, Defendant is entitled to summary judgment on Plaintiff's claims of both age and disability discrimination. *See Jackson v. Educ. and Emp't Ministry*, 687 F. App'x 577, 580 (10th Cir. 2017) ("[P]laintiffs have not demonstrated that the reasons given for the restructuring are unworthy of belief. '[O]ur role is to prevent intentional discriminatory … practices, not to act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments.'" (citation omitted.)

In view of the court's conclusion that Plaintiff has shown no genuine issue of fact as to whether Defendant's reasons for Plaintiff's termination were pretextual, the court need not address Defendant's additional arguments that Plaintiff failed to exhaust administrative remedies on her age and disability discrimination claims.

### IV. Conclusion

Defendant's motion for summary judgment (Doc. 38) is GRANTED.  Plaintiff's claims are dismissed on the merits.  The clerk is directed to enter a judgment of dismissal in favor of Defendant.  IT IS SO ORDERED this 23rd day of September, 2022.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE